UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOLARMORE MANAGEMENT SERVICES INC., a California Corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>BANKRUPTCY ESTATE OF DC SOLAR SOLUTIONS, INC., et al.,<br><br>                    Defendants. | No.  2:19-cv-02544-JAM-DB<br><br>**ORDER DENYING DEFENDANTS HERITAGE BANK, DIANA KERSHAW, AND ARI LAUER'S MOTION TO DISMISS** |

I.    FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND[1]

        This action arises from a fraudulent scheme involving the sale of mobile solar generators ("MSGs").  From 2011 to 2018, operators of the scheme, sold thousands of these generators.  Second Am. Compl. ("SAC") at 6, ECF No. 144.  Purchasers paid $150,000.00 for each, with a down payment of around $37,500 and a promissory note for the balance payable over twenty years.  Id.  Purchasers were told the generators would be sublet to end users which would provide a steady flow of revenue to cover any amount owed on the promissory note.  Id.  The operators also represented

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for November 2, 2021.

that the generators qualified for certain energy tax credits.
Id.  In actuality, many of the purchased generators were never
built.  Id.  Those that were built were not worth $150,000.00, as
there was never a market for them and thus no prospects for the
promised sublease revenues.  Id.  They also did not qualify for
the represented tax credits.  Id.

Plaintiff Solarmore Management Services, Inc. is a
California corporation, part owner, and managing member of
various limited liability companies ("LLCs") that purchased
mobile solar generators ("the Funds").  Id. ¶¶ 1-2, 159.
Plaintiff brought this action against three groups of Defendants:
(1) Defendants who orchestrated and perpetuated the fraudulent
enterprise; (2) Defendants who aided and abetted the fraudulent
enterprise; and (3) Defendants who facilitated the fraudulent
enterprise by hiding money and mobile solar generators (or the
lack thereof) from purchasers and other investigating parties.
Id. at 6.  Relevant to this motion, Defendant Heritage Bank of
Commerce ("Heritage") is alleged to have aided and abetted the
fraud.  Id. ¶¶ 61-62.  Specifically, Plaintiff claims that Diana
Kershaw, acting as an officer, agent, or employee of Heritage,
cooperated with the operators of the scheme to conceal or
restrict information from Plaintiff about its accounts with
Heritage and allowed for misappropriation of its finds.  Id.
¶¶ 61-65, 262-266.

Plaintiff asserts five claims against Heritage Bank:
(1) count twenty one for aiding and abetting fraud; (2) count
twenty two for aiding and abetting conversion; (3) count twenty
three for negligence; (4) count twenty four for violation of

1   California's business and professions code; and (5) count twenty

2   eight for equitable contribution. Id. at 85-97. Heritage

3   previously brought a Motion to Dismiss all claims against it, see

4   Heritage Bank's First Mot. to Dismiss, ECF No. 84, which the

5   Court granted. Order, ECF No. 138. Plaintiff subsequently

6   amended its complaint. See generally SAC. Heritage again moves

7   for dismissal, which Diana Kershaw and Ari Lauer join.[2]

8   Heritage's Second Mot. to Dismiss ("Mot."), ECF No. 156; Kershaw

9   Joinder, ECF No. 157; Lauer Joinder, ECF No. 161. Plaintiff

10  opposed this Motion. Opp'n, ECF No. 169. Defendant replied.

11  Reply, ECF No. 177. For the reasons set forth below this Motion

12  is denied.

13

14                          II.   OPINION

15      A.   Judicial Notice

16      Heritage requests the Court take judicial notice of seven

17  exhibits: (1) a copy of the Motion for Order Approving

18  Compromise and Settlement Agreement and Award of Contingency Fee

19  in the related bankruptcy case In re Double Jump, Inc.; (2) the

20  Trustee's Declaration in Support of the Motion for Order

21  Approving Compromise and Settlement Agreement and Award of

22  Contingency Fee filed in that bankruptcy case; (3) the Order

23  Granting the Motion to Approve Compromise and Settlement

24  agreement in that case; (4) the Articles of Incorporation of DC

25  Solar Distribution; (5) the Articles of Incorporation for

26  _____

27  [2] Halo Management Services also sought to join but the parties
    subsequently stipulated to the dismissal of all claims against it
    thereby mooting that motion. See Halo and Solarmore's Stip. and

28  Order, ECF No. 176.

1   Solarmore Management Services, Inc. which was filed with the

2   California Secretary of State; (6) a Detail report for JG Energy

3   Solutions, LLC from the Illinois Secretary of State's official

4   website; and (7) the California Secretary of State Entity Detail

5   page for JG Energy printed from the California Secretary of

6   State's website.  Heritage's Req. for Judicial Notice ("RJN"),

7   ECF No. 156-4.  Plaintiff requests the Court take judicial

8   notice of three exhibits: (1) a declaration of the Trustee filed

9   in the bankruptcy action; (2) an Order granting the Motion for

10  Approving Compromise and Settlement Agreement with Heritage Bank

11  in the Bankruptcy action; and (3) a printout from the California

12  Secretary of State's website showing that Solarmore Management

13  Services, Inc. is an active California Corporation.  Pl.'s Req.

14  for Judicial Notice ("RJN"), ECF No. 170.

15      After reviewing each exhibit, the Court finds all exhibits

16  to be matters of public record and therefore proper subjects of

17  judicial notice.  Accordingly, the Court GRANTS Heritage and

18  Plaintiff's Requests for Judicial Notice.  However, the Court

19  takes judicial notice only of the existence of these documents,

20  not any disputed or irrelevant facts within them.  See Lee v.

21  City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001).

22      B.   Legal Standard

23      Dismissal is appropriate under Rule 12(b)(6) of the Federal

24  Rules of Civil Procedure when a plaintiff's allegations fail "to

25  state a claim upon which relief can be granted."  Fed. R. Civ.

26  P. 12(b)(6).  "To survive a motion to dismiss a complaint must

27  contain sufficient factual matter, accepted as true, to state a

28  claim for relief that is plausible on its face."  Ashcroft v.

4

1    Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and
2    citation omitted).  While "detailed factual allegations" are
3    unnecessary, the complaint must allege more than "[t]hreadbare
4    recitals of the elements of a cause of action, supported by mere
5    conclusory statements."  Id.  "In sum, for a complaint to
6    survive a motion to dismiss, the non-conclusory 'factual
7    content,' and reasonable inferences from that content, must be
8    plausibly suggestive of a claim entitling the plaintiff to
9    relief."  Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir.
10   2009).

11        C.   Analysis

12             1.   Prudential Standing

13        A direct action by a shareholder or member is a suit to
14   enforce a right which the shareholder or member possesses as an
15   individual.  See PacLink Commc'ns Int'l v. Superior Court, 90
16   Cal.App.4th 958, 964 (2001).  In general, shareholders of a
17   corporation or members of an LLC lack prudential standing to
18   assert individual claims based on harm to the corporation or LLC
19   in which they own shares.  Erlich v. Glasner, 418 F.2d 226, 228
20   (9th Cir. 1969); PacLink, 90 Cal.App.4th at 965-66.  A
21   derivative suit on the other hand, "seeks to recover for the
22   benefit of the corporation and its whole body of shareholders
23   when [the] injury is caused to the corporation."  Jones v. H.F.
24   Ahmanson & Co., 460 P.2d 464, 470 (Cal. 1969).  A shareholder or
25   member bringing a derivative action must meet certain procedural
26   requirements.  Fed. R. Civ. P. 23.1; Sax v. World Wide Press,
27   Inc., 809 F.2d 610, 613 (9th Cir. 1987).

28        This Court previously dismissed Plaintiff's claims on

1  prudential standing grounds.  Order at 8.  The Court found that

2  any injury of Solarmore's alleged was merely incidental to that

3  of the Funds and thus, Plaintiff could not bring a direct

4  action.  Id.  Plaintiff subsequently amended its complaint

5  specifying damages including: (1) costs and expenses incurred to

6  locate and store the solar generators and hire related

7  professionals to protect its interest in the DC Solar

8  Enterprises' bankruptcies; (2) potential liability for claimed

9  tax credits; (3) seizure of money from its bank account due to

10  the fraud; (4) failure to receive contracted for management

11  fees; and (5) the costs of counsel it has been required to

12  obtain.  Opp'n at 3 (citing to SAC ¶¶ 516-521).  Plaintiff

13  argues that these allegations state a claim for direct harm to

14  Plaintiff, not to the Funds or any other party, and thus it has

15  standing.  Id. at 3-4.  Defendant, however, counters that these

16  injuries are merely incidental to the injury suffered by the

17  Funds.  Mot. at 4.

18       "In determining whether an individual action as opposed to

19  a derivative action lies, a court looks at the gravamen of the

20  wrong alleged in the pleadings."  PacLink, 90 Cal.App.4th at 965

21  (internal quotation marks and citation omitted).  A "cause of

22  action is individual, not derivative, only where it appears that

23  the injury resulted from the violation of some special duty owed

24  the stockholder by the wrongdoer and having its origin in

25  circumstances independent of the plaintiff's status as a

26  shareholder."  Nelson v. Anderson, 72 Cal.App.4th 111, 124

27  (1999), as modified on denial of reh'g (June 14, 1999).

28       In Nelson, a minority shareholder argued she could bring an

6

individual cause of action because she suffered direct,

individual damages such as "injury to her reputation and

emotional distress, and lost her out of pocket expenses, as well

as other employment opportunities." Id.  The Court disagreed

noting that the test is not whether the plaintiff's damages are

unique.  Id.  Rather, "an individual cause of action exists only

if the damages were not incidental to an injury to the

corporation." Id.  Because the acts alleged to have caused

Nelson's injuries amounted to misfeasance or negligence in

managing the corporation's business, any obligations so violated

were duties owed to the corporation. Id. at 125.  Accordingly,

the gravamen of the complaint was injury to the corporation and

any injury to Nelson was merely incidental. Id. at 125-26.

Thus, Nelson could not sustain a direct cause of action. Id.

Here the gravamen of Plaintiff's complaint is that the

Funds were fraudulently induced to purchase the MSGs and that

Heritage, among others, assisted in this fraud.  However,

Plaintiff does allege an injury resulted from the violation of

some special duty owed to it by Heritage, "having its origin in

circumstances independent of the plaintiff's status as a

shareholder." Nelson, 72 Cal.App.4th at 124. (internal

quotation marks and citation omitted).  Specifically, Plaintiff

had an account with Heritage, who allegedly allowed the Carpoffs

to misappropriate the funds in this account. SAC ¶¶ 703-705.

However, the Court agrees with Heritage that Plaintiff does not

have standing to pursue the losses it obtained from the Funds'

investment in the MSGs, aside from JG Energy's, of which it has

been assigned.  Nor does it have standing to pursue those

7

1  damages that are merely incidental to that injury, such as the

2  cost of locating the MSGs or resulting tax losses, as those it

3  only obtained as a result of its status as a shareholder.[3]

4      Finally, as to JG Energy, Heritage argues Plaintiff cannot

5  pursue a claim on its behalf, as JG Energy was engaged in

6  intrastate business but never registered in California.  Mot. at

7  6 (citing Cal. Corp. Code §§ 2203(c), 2015(a)).  The Court

8  agrees with Plaintiff that Heritage has not demonstrated JG

9  Energy engaged in intrastate business.  Opp'n at 4 (noting Cal.

10 Corp. Code § 191(a) defines intrastate business as entering into

11 repeated and successive transactions of its business in this

12 state, other than interstate or foreign commerce.).  It's not

13 clear from the complaint that JG's conduct meets the "repeated

14 and successive transactions" standard.  See Cal. Corp. Code

15 § 191(a); see also YYGM S.A. v. Hanger 221 Santa Monic Inc., No.

16 CV 14-34637 PA (VBKc), 2015 WL 12819169, at *3 (C.D. Cal. Apr.

17 20, 2015) (rejecting a motion to dismiss based on section

18 2203(c) because the burden is on defendants to prove the

19 corporation engaged in intrastate business).

20      2.   Commercial Code's Statute of Repose

21      Division 11 of the Commercial Code governs "funds

22 transfers," meaning "the series of transactions, beginning with

23

24 [3] Heritage requests the Court strike various excerpts from the
   complaint referencing the Funds.  Ex. A. to Mot., ECF No. 156-1.
25 The Court agrees with Plaintiff that these allegations provide
   necessary context and denies Heritage's request.  See In re New
26 Century, 588 F.Supp.2d 1206, 1220 (C.D. Cal. 2008) ("Motions to
   strike are not favored and should not be granted unless it is
27 clear that the matter to be stricken could have no possible
   bearing on the subject matter of the litigation.").
28

1  the originator's payment order, made for the purpose of making

2  payment to the beneficiary of the order."  Cal. Com. Code §§

3  11102, 11104(a).  This division displaces common law claims

4  where the common law claims would create, rights, duties, or

5  liabilities inconsistent with the division and where the

6  circumstances giving rise to the common law claims are

7  specifically covered by the division's provisions.  Zengen, Inc.

8  v. Comerica Bank, 41 Cal.4th 239, 253 (2007).

9      Defendant argues that all of Plaintiff's claims based upon

10  unauthorized transfers of funds from its account are displaced

11  by Division 11 of the California Commercial Code.  Mot. at 8-9.

12  Plaintiff counters that Division 11 does not apply here where

13  the person sending the transfer request is the same person

14  receiving payment from the account.  Opp'n at 8.  Rather,

15  Plaintiff contends this is an exempted debit transfer.  Id.

16      However, as Heritage points out, a debit transfer is one in

17  which "a creditor, pursuant to authority from the debtor is

18  enabled to draw on the debtor's bank account by issuing an

19  instruction to pay to the debtor's bank.  If the debtor's bank

20  pays, it will be reimbursed by the debtor rather than by the

21  person giving the instruction."  Cal. Com. Code § 11104 comment

22  4.  An example of such a debit is where an insured authorizes

23  its insurer to order the insured's bank to pay the insurance

24  company the policy premium.  Id.  That is not what is alleged

25  here.  Rather, Plaintiff alleges the Carpoffs directed money be

26  transferred from Solarmore to themselves.  This is governed by

27  Division 11.  Cal. Com. Code § 11104 comment 4.  ("If the

28  beneficiary of a funds transfer is the originator of the

9

1   transfer, the transfer is governed by Article 4A if it is a

2   credit transfer in form [. . .] For example, Corporation has

3   accounts in Bank A and Bank B.  Corporation instructs Bank A to

4   pay to Corporation's account in Bank B.  The funds transfer is

5   governed by Article 4A.")  However, this would only displace

6   claims to the extent they are based on unauthorized transfers of

7   funds.  See Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.,

8   19-cv-02778-TSH, 2019 WL 3503109, at *4 (N.D. Cal. Aug. 1, 2019)

9   (noting that because plaintiff claims were not based solely on

10  wire transfers but also on the bank's subsequent actions they

11  were not preempted).

12      The Commercial Code imposes a one-year statute of repose

13  within which a customer must notify its bank of its objection to

14  an allegedly improper funds transfer, so long as the customer

15  received notification reasonably identifying the order.  Cal.

16  Com. Code § 11505.  Under the Commercial Code one receives

17  notice when "it is delivered in a form reasonable under the

18  circumstances at the place of business through which the

19  contract was made or at another location held out by that person

20  as the place for receipt of such communications."  Id.

21  § 1202(e)(2).

22      Plaintiff argues that its claims are not barred by the

23  statute of repose as it never received notice.  Opp'n at 9.

24  Plaintiff alleges its bank statements were sent to DC Solar and

25  Jeff Carpoff, rather than Plaintiff.  SAC ¶¶ 276, 277.

26  Heritage, however, argues that Solarmore had the same address as

27  DC Solar.  Mot. at 9 (citing RJN Ex. 4 and 5).  The Court cannot

28  at this early stage conclude Plaintiff received notice.  While

10

1   the complaint states that the bank statements were sent to DC

2   Solar and Jeff Carpoff, it does not specify to what address.

3   SAC ¶ 276.  Taking the allegations in the complaint as true and

4   viewing them in the light most favorable to Plaintiff, as the

5   Court must at this stage, its plausible that the statements were

6   sent to an address not shared with Plaintiff.  On the face of

7   the complaint, it is not apparent that Plaintiff received

8   notice.  Accordingly, Plaintiff's claims based on unauthorized

9   transfer of funds may not be subject to the statute of repose.

10       Heritage also contends that Plaintiff's claims are barred

11  by the applicable statutes of limitations for each claim.  Mot.

12  at 6-7 (noting statute of limitations for aiding and abetting,

13  civil conspiracy and negligence is three years and for unfair

14  competition is four years).  It contends that Plaintiff cannot

15  rely on the delayed discovery doctrine because it did not plead

16  facts showing its inability to have discovered the fraud earlier

17  despite reasonable diligence.  Mot. at 7; Reply at 3.  However,

18  as Plaintiff points out, federal pleading requirements apply in

19  federal court.  Beavery v. Tarsadia Hotels, No. 11cv1842 DMS

20  (CAB), 2011 WL 6098165, at * 8 (S.D. Cal. Dec. 6, 2011)

21  (rejecting defendants' argument that plaintiff must plead

22  delayed discovery with specificity as required by California law

23  as this is precluded by the Erie doctrine in which federal

24  procedural rules control).  Accordingly, its general allegations

25  of delayed discovery are sufficient at this stage.

26           3.   Civil Conspiracy and Aiding and Abetting Claims

27       In California, the elements of a civil conspiracy are:

28  "(1) the formation of a group of two or more persons who agreed

1    to a common plan or design to commit a tortious act; (2) a

2    wrongful act committed pursuant to the agreement; and

3    (3) resulting damages." Rockridge Trust v. Wells Fargo, N.A.,

4    985 F.Supp.2d 1110, 1157 (N.D. Cal. 2013).  A California civil

5    conspiracy claim must be plead with particularity where the

6    object of the agreement is fraudulent.  See Wasco Prods., Inc.

7    v. Southwall Tech., Inc., 435 F.3d 989, 990-92 (9th Cir. 2006).

8    California also "has adopted the common law rule" that

9    "[l]iability may [. . .] be imposed on one who aids and abets

10   the commission of an intentional tort if the person [. . .]

11   knows the other's conduct constitutes a breach of a duty and

12   gives substantial assistance or encouragement to the other to so

13   act."  Casey v. U.S. Bank Nat'l Assn., 127 Cal.App.4th 1138,

14   1144 (2005).  To satisfy the knowledge prong, the defendant must

15   have "actual knowledge of the specific primary wrong the

16   defendant substantially assisted."  Id. at 1145.

17        Heritage argues Plaintiff has not sufficiently alleged its

18   knowledge to support either the conspiracy or aiding and

19   abetting claim.  Mot. at 11-12.  The Court disagrees.  The

20   operative complaint specifically alleges that Kershaw, an

21   employee of Heritage, cooperated with the Carpoffs to conceal

22   and restrict relevant information from Plaintiff about their

23   account.  SAC ¶¶ 259-293.  Plaintiff also alleges that Kershaw

24   knew the Carpoffs were defrauding Plaintiff by diverting and

25   misappropriating its funds.  Id. ¶ 262.  While Plaintiff alleges

26   Kershaw knew as early as March 2015 that the Carpoffs were

27   defrauding Plaintiff on information and belief, this is

28   corroborated by specific factual allegations.  Id. ¶¶ 261, 263-

                                    12

266, 269, 272-274.  This is sufficient to overcome a motion to dismiss.  <u>See</u> Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularly the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and conditions of a person's mind may be alleged generally."); <u>see also</u> <u>Benson v. JPMorgan Chase Bank, N.A.</u>, Nos. C-09-5272 EMC, 2010 WL 1526394, at *3-5 (N.D. Cal. April 15, 2010) (noting that "Plaintiff supported these allegations of knowledge with more detailed factual allegations" and taken together these allegations satisfied the <u>Twombly/Iqbal</u> plausibility requirement).

### 4.  <u>Negligence Claim</u>

In order to plead a claim for negligence, a plaintiff must establish: (1) the existence of a legal duty of care; (2) a breach of that duty; and (3) proximate cause resulting in injury.  <u>Castellon v. U.S. Bancorp</u>, 220 Cal.App.4th 994, 998 (2013).

Heritage argues Plaintiff's negligence claim fails as it owed no duty to Solarmore.  Mot. at 13.  But the cases it relies upon do not support this.  <u>Id.</u> (citing <u>Chazen v. Centennial Bank</u>, 61 Ca. App. 4th 532, 537 (1998) and <u>Copesky v. Superior Court</u>, 229 Cal. App. 3d 678, 693-94 (1991)).  While <u>Chazen</u> holds banks do not have a duty to proactively police accounts, it also acknowledges that banks have a duty to act with reasonable care in its transactions with its depositors.  <u>Chazen</u>, 61 Cal.App.4th at 538, 543.  The latter is what Plaintiff relies upon here.  Opp'n at 12-13.  Plaintiff does not contend that Defendant breached its duty by failing to monitor and report suspicious

13

1   activity.  Rather, Plaintiff's claim is that Heritage breached

2   its duty of care by permitting numerous improper fund transfers

3   and commingling of funds, which assisted the Carpoffs'

4   conversion.  Id.; SAC ¶¶ 710-714.  Accordingly, Defendants'

5   motion to dismiss Plaintiff's negligence claim is denied.[4]

6

7                        III.   ORDER

8        For the reasons set forth above, the Court DENIES Defendants

9   Heritage, Kershaw, and Lauer's Motion to Dismiss.

10        IT IS SO ORDERED.

11   Dated:  February 4, 2022

12                                    _____

13                                    JOHN A. MENDEZ,
                                      UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26   _____

27   [4] Heritage also argues that the Unfair Competition Law and
     contribution claims fail as they are dependent on the other
     causes of action.  Mot. at 14-15.  Because the Court declines to
28   dismiss the other causes of action, these claims survive as well.

                              14